NOTICE

Decision filed 06/30/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210141-U

NO. 5-21-0141

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Massac County. |
| | ) | |
| v. | ) | No. 12-CF-29 |
| | ) | |
| MICHAEL D. THOMPKINS, | ) | Honorable |
| | ) | William J. Thurston, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Where the defendant did not satisfy the "cause" prong of the cause-and-prejudice test, the circuit court did not err in denying him leave to file a successive postconviction petition, and since any argument to the contrary would lack merit, the defendant's appointed counsel on appeal is granted leave to withdraw, and the judgment of the circuit court is affirmed.

¶ 2    Defendant, Michael D. Thompkins, appeals the trial court's order summarily dismissing his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The defendant's appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit. Accordingly, OSAD has filed a motion to withdraw as counsel for the defendant (see *Pennsylvania v. Finley*, 481 U.S. 551 (1987)) along with a brief in support of the motion. OSAD has provided the defendant with a copy of its *Finley* motion and brief. This court has provided him with ample opportunity to file a written *pro se* brief,

1

memorandum, etc., responding to OSAD's motion or explaining why this appeal has merit. The defendant has not filed any sort of response. Having read OSAD's *Finley* motion and brief, and having examined the record on appeal, this court concludes that the instant appeal does indeed lack merit. There is no potential ground for appeal. Accordingly, we grant OSAD leave to withdraw and affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      In 2016, defendant Thompkins was convicted of the 2012 murder of Jackie LaShaun Blake (720 ILCS 5/9-1(a)(1) (West 2010)), the attempted murder of Jessica Horn (*id.* §§ 8-4(a), 9-1(a)(1)), and home invasion (*id.* § 12-11(a)(2)). Before trial, defendant moved to suppress evidence of the shoes he wore when he was arrested, which were linked to bloody shoeprints found at the crime scene. Defendant argued that he was arrested illegally because police, without a warrant, obtained information from his cell phone carrier that revealed his location. The trial court denied the motion.

¶ 5      The defense also moved *in limine* to exclude letters that defendant sent from jail to Horn and to his mother. In these letters, which were intercepted by jail personnel, defendant admitted killing Blake and asked his mother and Horn for forgiveness. Notably, he wrote that he intended to kill Horn. The trial court denied the motion.

¶ 6      Briefly summarized, evidence at trial showed that defendant and Horn dated for approximately three years. They lived together for part of this time and had a daughter, Ja'Chel, together. However, the relationship ended and Horn began dating Blake. The defendant and Horn had no contact for several months prior to March 2012. Early that month, however, they began communicating. Most of their discussions focused on arranging an opportunity for the defendant to see Ja'Chel.

2

¶ 7    Early in the morning of March 25, 2012, defendant went to Horn's apartment. Horn was not home when the defendant arrived, so he waited outside the apartment for her to return. When Horn returned home with Blake, defendant saw them get out of a vehicle and enter the apartment together. Defendant walked away to smoke a cigarette. He then walked back to the apartment, looked in the window, and saw Horn and Blake having sex on the sofa. Upon seeing this, defendant became enraged. He broke a window in the kitchen door and entered the apartment. Once inside, he used a kitchen knife and a barbecue fork to stab Blake, who died from his injuries, and Horn. Horn persuaded defendant to stop stabbing her by urging him to think about their daughter. At trial, Horn identified defendant as the assailant.

¶ 8    Later that day, Jackie Wilson was mowing his lawn. He had heard that a murder suspect was in the area and observed Thompkins in his backyard. While his wife called police, Wilson held Thompkins at gunpoint until police arrived. Police then arrested defendant.

¶ 9    The State introduced the letters that defendant wrote from jail. It also presented evidence that the shoes defendant was wearing when he was arrested matched the bloody shoeprints found at the scene. A bloody palm print on the bathroom door belonged to defendant.

¶ 10   The jury found defendant guilty. The court sentenced him to consecutive terms of 60 years for first degree murder and 25 years for attempted murder.

¶ 11   On direct appeal, this court affirmed. *People v. Thompkins*, 2020 IL App (5th) 160345-U. On February 5, 2021, defendant filed a postconviction petition. In it, he raised two claims. He first argued that trial counsel was ineffective for not "properly" presenting the facts surrounding his arrest in the motion to suppress. He contended that a state trooper had testified at his preliminary hearing that defendant was apprehended due to the warrantless collection of his cell phone data. He attached to the petition a transcript of the preliminary hearing at which state trooper

3

Alicia Barr testified that defendant "had a cell phone with him that we had pinged through Verizon and learned his whereabouts that way." Defendant further contended that appellate counsel was ineffective for failing to raise this issue on appeal.

¶ 12     Defendant's second principal contention was that his rights were violated when (1) he was not notified that the jail was "withholding" his mail and (2) the State argued that he had sent a letter to Horn while an order of protection was in effect. Defendant argued that he sent the letter after the order of protection had expired. He attached to the petition an order of protection that expired on July 15, 2012.

¶ 13     On April 26, 2021, the trial court summarily dismissed the petition. The electronic docket sheet reflects a "record sheet entry" on April 26, 2021, with no further information. On November 30, 2021, the trial court clarified that the April 26 docket sheet entry was its dismissal order. Attached to the November 30 order was the April 26 dismissal order, although it does not contain a date, caption, or signature. Defendant timely appealed. The circuit court appointed OSAD to represent the defendant.

¶ 14                                    ANALYSIS

¶ 15     Counsel first concludes that defendant has no viable argument that the court failed to comply with applicable procedures in dismissing the petition. We agree. The Act provides a way for criminal defendants to challenge substantial violations of their constitutional rights in the proceedings resulting in their convictions. The Act contemplates three possible stages. At the first stage the trial court must, within 90 days from a petition's filing, review the petition to decide whether to advance the petition to the second stage or dismiss it as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2), (b) (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). The court must make this determination without any input from the State. *People v. Gaultney*, 174 Ill.

4

2d 410, 418 (1996). We review *de novo* whether the trial court properly dismissed a petition. *People v. Allen*, 2015 IL 113135, ¶ 19.

¶ 16 Here, the record shows that the trial court complied with this procedure. While the dismissal order did not initially appear in the record, the court subsequently clarified that it dismissed the petition on April 26, 2021, within 90 days of its filing. The record provides no basis to question the court's assertion in this regard. Moreover, the record does not show any input from the State during this process.

¶ 17 Counsel next concludes that defendant could not plausibly argue that the court erred substantively by dismissing the petition. Counsel concludes that neither claim it raised has even arguable merit. First, counsel contends that defendant has no arguable claim that trial and appellate counsel were ineffective with regard to the issue of tracking defendant through his cell phone.

¶ 18 Defense counsel provides ineffective assistance when his or her representation falls below an objective standard of reasonableness, and those deficiencies undermine confidence in the outcome of the proceedings or deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984). A claim of ineffective assistance of appellate counsel is governed by the same standards. *People v. Childress*, 191 Ill. 2d 168, 175 (2000).

¶ 19 There is no real dispute that police, without a warrant, obtained data on defendant's cell phone and used it to track him. Wilson testified at trial that he spotted defendant in his yard and held him until police arrived, which would mean that the cell phone data played no part in defendant's arrest. While Barr's testimony at the preliminary hearing might support a different conclusion, any discrepancy is of no real significance here.

¶ 20 While acquiring from a telecommunications company personal location information stemming from cellular phone activity normally requires a warrant (*Carpenter v. United States*,

5

585 U.S. ___, ___, 138 S. Ct. 2206, 2217, 2220-21 (2018)), exigent circumstances may dispense with the need for a warrant. See *People v. McNeal*, 175 Ill. 2d 335, 345 (1997). Factors to consider in deciding whether an exigency exists include such things as whether (1) the crime under investigation was recently committed; (2) there was any deliberate or unjustified delay by the police during which time a warrant could have been obtained; (3) a grave offense was involved, particularly a crime of violence; (4) there was reasonable belief that the suspect was armed; (5) the police officers were acting on a clear showing of probable cause; and (6) there was a likelihood that the suspect would escape if he was not swiftly apprehended. *Id.*

¶ 21 Here, police were searching for defendant shortly after he had stabbed two people. He was apparently emotionally distraught and might still have had one of the weapons he used. Police feared that he might return and try to harm Horn again. Thus, there was a strong likelihood that exigent circumstances justified the relatively slight intrusion caused by collecting defendant's cell phone data.

¶ 22 Moreover, the only items of any real evidentiary value seized during defendant's arrest were his shoes, which were matched to bloody shoeprints at the crime scene. See *People v. Pacheco*, 281 Ill. App. 3d 179, 184 (1996) ("the only remedy for an illegal arrest is the exclusion of evidence resulting from that arrest"). But identity was not an issue at trial. Horn, who had dated defendant for three years, lived with him, and had a child with him, identified defendant as her attacker. Indeed, defendant never disputed that he stabbed Blake and Horn. His defense was that he did so under an intense provocation, making him guilty only of second degree murder. Thus, any arguable error in admitting defendant's shoes at trial was undoubtedly harmless. Accordingly, trial counsel was not ineffective in his presentation of the issue and appellate counsel was not ineffective for failing to raise the issue.

6

¶ 23 Finally, we agree with counsel that defendant could raise no issue of even arguable merit regarding the admission of the letters he wrote from jail. Defendant contended in his petition that the letters were inadmissible because jail staff did not inform him that they were withholding his mail, and the prosecutor wrongly asserted that defendant sent the letter to Horn while an order of protection was in effect.

¶ 24 Initially, we note that this issue was forfeited because it could have been raised on direct appeal but was not. See *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). Defendant does not appear to contend that appellate counsel was ineffective for failing to raise the issue. Moreover, defendant could not plausibly claim that trial counsel was ineffective in this regard because he did raise the issue in a motion *in limine*.

¶ 25 Counsel concludes that any error in the admission of the letters was harmless because they were not relevant to any contested issue at trial. This is unquestionably true with regard to Blake's murder because defendant's identity was not in question. The issue is less clear with regard to the attempted murder of Horn. On direct appeal, we cited them as the only direct evidence of defendant's intent to kill Horn. *Thompkins*, 2020 IL App (5th) 160345-U, ¶ 72.

¶ 26 In any event, we agree with counsel that the letters were properly admitted as defendant had no reasonable expectation of privacy in mail he sent from prison. See *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (prison officials' regulation of unprivileged incoming and outgoing prison mail is " 'essentially an administrative matter in which the courts will not intervene' " (quoting *Wilkerson v. Warden of U.S. Reformatory, El Reno*, 465 F.2d 956, 957 (10th Cir. 1972))).

¶ 27 The Illinois Administrative Code provides that outgoing inmate mail may be inspected and read. 20 Ill. Adm. Code 701.180(c). Thus, defendant could have had no legitimate privacy

expectation in the letters. Defendant's only contention in the petition is that jail officials did not notify him that his mail was being withheld. Assuming that section 701.180(c) applies to the Massac County jail, defendant misreads that section.

¶ 28    Section 701.180 provides that "mail may be reproduced or withheld from delivery" in several enumerated circumstances. *Id.* § 701.180(c)(5). In that event, "[t]he detainee shall be notified in writing of any outgoing mail withheld." *Id.* § 701.180(c)(6). Defendant cites no evidence that the letters were withheld from delivery. In any event, it is not clear that any failure to notify defendant would render the letters inadmissible at trial, as officials were clearly authorized to open and read the mail.

¶ 29    Defendant also contended in his petition that the prosecutor stated that the letter to Horn was written while an order of protection was in effect. He attached to the petition an order of protection that had expired when the letters were written. Counsel notes the possibility that the order could have been extended but argues that, in any event, whether an order of protection was in effect was not a factor in the decision to admit the letters. We agree. Nothing in the record indicates that the fact that they were written while an order of protection was in effect was a material factor in the decision to admit them. They were clearly relevant to the issues of identity and intent and, as party admissions, were not hearsay. See Ill. R. Evid. 801(d)(2)(A) (eff. Oct. 15, 2015).

¶ 30                                    CONCLUSION

¶ 31    For the foregoing reasons, OSAD's *Finley* motion is granted, and the judgment of the circuit court is affirmed.

¶ 32    Motion granted; judgment affirmed.